# EXHIBIT 1

FILED

MAY 1 0 2011.

*Sandra L. Coffett*
CIRCUIT CLERK

### IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

11 CH2225

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | |
| v. | |
| Interline Brands, Inc., a Delaware corporation; Interline Brands, Inc., a New Jersey corporation; | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Craftwood Lumber Company ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, and alleges:

### Introduction

1.    Nearly two decades ago Congress passed and the President enacted into law the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. The law responded to countless complaints by American consumers and businesses about the cost, disruption and nuisance imposed by junk faxes. The law prohibited the transmission of facsimile advertising without prior express invitation or permission of the recipient. In 2005,

1

because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by amending it through the Junk Fax Prevention Act of 2005 As amended, the law requires senders to include in their faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future junk faxes and how to exercise that right.

2.      Plaintiff brings this class action to recover damages for and enjoin extensive junk faxing by Defendants Interline Brands, Inc., and Interline New Jersey in direct violation of the JFPA. Plaintiff is informed and believes and upon such information and belief avers that Defendants have blasted thousands of junk faxes nationwide in direct violation of the JFPA and the regulations promulgated under the act by the Federal Communications Commission ("FCC"). Defendants' violations include but are not limited to the facsimile transmission of unsolicited advertisements on January 28, 2010, and April 14, 2010, to Plaintiff's facsimile telephone machine, true and correct copies of which are attached as Exhibits 1 and 2.

3.      **Standing and Jurisdiction**. This Court has subject matter jurisdiction over this matter and Plaintiff has standing to seek relief in this Court because 47 U.S.C. § 227(b)(3) authorizes commencement of an action in an appropriate state court to obtain damages in the amount of $500 for each violation of the JFPA, to enjoin further violations of the act, or for both such actions.

**The Parties**

4.      **Individual Plaintiff/Class Representative**. Plaintiff Craftwood Lumber Company ("Plaintiff") is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of Illinois, with its principal place of

2

business in Highland Park, Illinois. Plaintiff is and at all times relevant hereto was the subscriber of the facsimile telephone number (847) 831-2805 to which the faxes attached as Exhibits 1 and 2 were sent.

5.     **Defendant Interline Brands, Inc.** Plaintiff is informed and believes and upon such information and belief avers that Defendant Interline Brands, Inc., is, and at all times relevant hereto was, a publicly-traded corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Jacksonville, Florida.

6.     **Defendant Interline Brands, Inc.** Plaintiff is informed and believes and upon such information and belief avers that Defendant Interline Brands, Inc. ("Interline New Jersey"), is, and at all times relevant hereto was, a corporation organized and existing under the laws of the state of New Jersey, having its principal place of business in Jacksonville, Florida. Interline New Jersey is the principal operating unit of Interline Brands, Inc. Unless otherwise indicated, Defendants Interline Brands, Inc, and Interline New Jersey are collectively referred to throughout this Complaint as "Interline" or "Defendants."

### The JFPA's Prohibition Against Junk Faxing

7.     By the early 1990s advertisers had exploited facsimile telephone technology to blanket the country with junk fax advertisements. This practice imposed tremendous disruption, annoyance, and cost on the recipients. Among other things, junk faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, require recipients to sort through faxes to separate legitimate fax communications from junk advertisements and to discard the latter.

3

Congress responded to the problem by passing the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. The TCPA made it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C).[1] The anti-junk fax law was enacted to eradicate "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. No. 102-317 (1991).

8.    In the decade following the law's enactment, however, American consumers and businesses continued to be "besieged" by junk faxes because senders refused to honor requests by recipients to stop. FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003). Congress responded by strengthening the law through the Junk Fax Prevention Act of 2005 ("JFPA"). The JFPA continued the prohibition against sending unsolicited advertisements via facsimile transmission. The FCC has defined a "sender" to include any "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(a)(3), (f)(8). The statute defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." § 227(a)(5).

9.    The JFPA for the first time required senders to disclose to recipients their right and ability to stop future junk faxes (hereinafter collectively the "Opt-Out Notice Requirements"). § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(3)(iii)-(vii). Advertisers must place the notice clearly and conspicuously on the first page of the fax transmission and provide prescribed disclosures that Congress

---

[1]    All statutory citations in this Complaint are to 47 U.S.C. § 227.

believed essential to enable junk fax recipients to opt-out of future faxes. Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. But these requirements are important consumer protections bestowed by Congress upon American consumers and businesses by giving them the right to stop unwanted junk faxes and to require senders to disclose that right and explain how to exercise that right. Even a fax advertisement sent with permission of the recipient is unlawful if the sender fails to comply with the Opt-Out Notice Requirements. 47 C.F.R. § 64.1200(a)(3)(iii)-(iv).

### The Interline Junk Fax Campaign

10.     Interline is a national distributor and direct marketer of specialty maintenance, repair and operations products ("MRO"). Interline's MRO products include plumbing, electrical, hardware, janitorial, heating, ventilation and air conditioning products. Interline markets its products through distinct brands. Interline sells to the facilities maintenance market through its Wilmar, Amsan, Sexauer, Trayco and Maintenance USA brands. Interline sells to professional contractors through the Barnett, U.S. Lock, Leran, SunStar and Copperfield brands. Interline sells to specialty distributors through its Hardware Express and AF Lighting Brands. Notwithstanding these brand distinctions, Interline markets its brands on a centralized basis through common employees, resources, and methods.

11.     Plaintiff is informed and believes and upon such information and belief alleges that to advertise their goods and services, Interline has blasted thousands of junk faxes to businesses. Interline calls its junk faxes "direct marketing promotional flyers" and regards them as a "key marketing tool." Plaintiff is further informed and believes and upon such information and belief alleges that to target its junk faxes, Interline purchases from third parties lists of facsimile telephone numbers and uses such lists to

5

send its junk faxes. Plaintiff is further informed and believes and upon such information and belief alleges that Interline has blasted junk faxes without first obtaining recipients' prior express permission to receive facsimile advertising, and without complying with the Opt-Out Notice Requirements, in direct violation of the JFPA and the FCC's regulations promulgated thereunder.

12.    The junk faxes sent to Plaintiff were part of Interline's junk fax marketing campaign. Exhibit 1 promotes plumbing products offered for sale by Interline under its "Hardware Express" brand. It invites recipients to "Contact your Hardware Express representative," and provides a toll-free number for that purpose. The fax also invites recipients to visit the website, www.e-HardwareExpress.com, which is a service and also contains multiple advertisements of products marketed under the "Hardware Express" brand. Exhibit 2 promotes pool chemicals offered for sale by Interline under its "Barnett Wholesale" brand. It invites recipients to "Contact your Barnett Wholesale Representative," and provides a toll-free number for that purpose. The fax also invites recipients to visit the website, www.e-barnett.com, which is a service and also contains multiple advertisements of products marketed under the "Barnett" brand. Plaintiff did not give Interline prior express permission to send these or any other fax advertisements to it.

**Class Action Allegations**

13.    **Statutory Reference.** This action is properly maintainable as a class action under authority of Code of Civil Procedure section 2-801 because: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of fact or law common to the class, which common questions predominate over questions affecting only individual members; (c) the representative parties will fairly and adequately protect

6

the interest of the class; and (d) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

14. **Class Definition**. The Plaintiff Class consists of all persons and entities that are subscribers of telephone numbers to which within four years of the filing of this Complaint, Defendants sent facsimile transmissions with content that discusses, describes, or promotes products offered under any Interline brand, including, without limitation, AF Lighting, AmSan, Barnett, Copperfield, Hardware Express, Leran, Maintenance USA, Sexauer, SunStar Lighting, U.S. Lock or Wilmar, and does not contain the notice required by 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2) or 47 C.F.R. § 64.1200(a)(3)(iii)-(vii), and for which Defendants sent at least 25 transmissions of each advertisement ("Plaintiff Class"). Excluded from the Plaintiff Class are Defendants, their respective officers, directors, employees, agents, predecessors, successors, subsidiaries, parents and affiliates, and Plaintiff's counsel and their respective attorneys, employees, and immediate family members.

15. **Class Size**. Plaintiff is informed and believes and upon such information and belief avers that the Plaintiff Class numbers in the thousands of persons or entities.

16. **Adequacy of Representation**. The Plaintiff Class will be well represented by the class representative and class counsel. Plaintiff appreciates the responsibilities of a class representative and understands the nature and significance of the claims made in this case. Plaintiff can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between its interests and the interests of other class members. Proposed class counsel have the necessary resources, experience and ability to prosecute this case on a class action basis. (Applications for *pro hac vice* admission for co-lead counsel Cordero and Zimmermann are being filed concurrently

with this Complaint.) Proposed lead counsel have 60 years experience representing clients in complex business disputes, have significant experience as class counsel in federal and state courts, and have significant experience litigating claims under the act.

17.    **Impracticability of Joinder.**  Joinder of all Plaintiff Class members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each Plaintiff Class member, in comparison to the time and costs associated with joinder in the litigation on an individual basis.

18.    **Common Questions of Law and Fact Are Predominant.**  Questions of law and fact common to the class predominate over questions affecting only individual class members. Numerous questions may be jointly tried and would not require each member individually to litigate numerous and substantial questions to determine his or her right to recover following the class judgment.

A.    **Common Questions of Fact.**  This case presents numerous questions of fact that are common to all class members claims. Defendants have engaged in a standardized course of conduct vis-à-vis class members, and plaintiffs' injuries arise out of that conduct. Plaintiff is informed and believes and upon such information and belief avers that the case arises out of a common nucleus of fact because, among other things, all junk faxes advertised Interline products; all junk faxes were prepared, developed and sent by Interline in the same manner for all recipients; and the faxes are the product of an organized fax-blasting campaign targeted to the class.

B.    **Common Questions of Law.**  The case presents numerous common questions of law, including, but not limited to:

8

(1)    whether the faxes at issue advertise the commercial availability or quality of property, goods or services and therefore fall within the ambit of the JFPA and the FCC's regulations promulgated thereunder;

(2)    Defendants' mode and method of obtaining the telephone numbers to which the junk faxes were sent and whether that mode and method complied with the requirements of subsection (b)(1)(C)(ii) and the FCC's regulations promulgated thereunder;

(3)    whether Defendants complied with the Opt-Out Notice Requirements of the JFPA and the FCC's regulations promulgated thereunder, and the legal consequences of the failure to comply with those requirements;

(4)    what constitutes a knowing or willful violation of the JFPA within the meaning of section (b)(3);

(5)    whether Defendants committed knowing or willful violations of the act;

(6)    whether damages should be increased on account of Defendants' knowing or willful violations of the act and, if so, by what amount; and

(7)    whether injunctive relief is warranted to enjoin Defendants from further violations of the JFPA.

19.    **Appropriate Method for Fair and Efficient Resolution of the Controversy.** A class action is an appropriate method for the fair and efficient

9

adjudication of the controversy for several reasons:

    A.    Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

    B.    Because Defendants have acted on grounds that apply generally to the class, final injunctive relief is appropriate respecting the class as a whole.

    C.    Questions of law and fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy:

    D.    Common questions of law and fact, including those identified in paragraph 18, predominate over questions affecting only individual members.

    E.    Absent class certification there is a possibility of multiple individual cases and, therefore, class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.

    F.    Most members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action. Because the statutory minimum damage is $500 per violation and the JFPA does not authorize an award of attorneys' fees to a successful plaintiff, individual action to remedy Defendants' violations of the act would be grossly uneconomical. As a practical matter, the claims of the vast majority of the Plaintiff Class are not likely to be redressed absent class

certification.

G.    Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and, hence, subject to an order spreading the cost of litigation among class members in relationship to the benefits received.

## Cause of Action for Violations of 47 U.S.C. § 227
### (Against Defendants Interline Brands, Inc., and Interline New Jersey)

20.    **Defendants' Violations of the Act.** Within four years of the filing of this Complaint and including, without limitation, on January 28, 2010, and on April 14, 2010, Defendants violated the JFPA and the FCC's regulations promulgated under the act by sending unsolicited advertisements via facsimile from telephone facsimile machines, computers, or other devices to telephone facsimile machines of Plaintiff and members of the Plaintiff Class. Among other things, Defendants violated the JFPA and the FCC's regulations because they (a) transmitted the advertisements without receiving recipients' prior express invitation or permission; and (b) failed to comply with the Opt-Out Notice Requirements by failing to make the disclosures required by section 227(b)(1)(C)(iii), (b)(2)(D) and (b)(2)(E), and by 47 C.F.R. § 64.1200(a)(3)(iii), (iv).

21.    Interline is a sender of the junk faxes alleged in this Complaint because it is the person or entity on whose behalf the facsimile unsolicited advertisements were sent and its property, goods and services are advertised or promoted in the unsolicited advertisements.

22.    **Private Right of Action.** Under section (b)(3) of the act, Plaintiff has a private right of action to bring this action on behalf of itself and on behalf of the Plaintiff

Class to redress Interline's violations of the act.

23. **Injunctive Relief.** Subsection (b)(3)(A) of the act authorizes Plaintiff to bring an action to enjoin a violation of the act. Plaintiff requests that preliminary and permanent injunctions issue to: (1) prohibit Defendants, their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with Defendants, from committing further violations of the act, and thereby prohibiting Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with Defendants, from sending any further unsolicited faxed advertisements to any person or entity; (2) require Defendants to deliver to Plaintiff all records of facsimile advertisements since February 1, 2007, including all content sent via facsimile, transmission lists, and fax confirmation lists; (3) require Defendants to adopt ongoing educational, training and monitoring programs to ensure compliance with the JFPA, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendants to provide written notice to all persons and entities to whom Defendants sent via facsimile transmission unsolicited advertisements, warning such persons and entities that the facsimile transmission of unsolicited advertisements is in violation of the JFPA and that they should not be led or encouraged in any way by Defendants' facsimile transmissions to fax unsolicited advertisements of their own; and (5) require Defendants to conspicuously place on the homepage of their respective websites the warnings contained in (4) of this paragraph 23.

24. **Damages.** Subsection (b)(3)(B) of the act provides for the recovery of damages in the minimum amount of $500 for each violation of the JFPA by Interline. In addition, Plaintiff is informed and believes and upon such information and belief avers that Interline committed its violations willfully or knowingly and that the amount of statutory damages should be trebled, as also authorized by subsection (b)(3)(B).

12

## Prayer for Relief

WHEREFORE, Plaintiff and the Plaintiff Class pray for judgment against Defendants, and each of them:

1.     Certifying a class consisting of all persons and entities that are subscribers of telephone numbers to which within four years of the filing of this Complaint, Defendants sent facsimile transmissions with content that discusses, describes, or promotes products offered under any Interline brand, including, without limitation, AF Lighting, AmSan, Barnett, Copperfield, Hardware Express, Leran, Maintenance USA, Sexauer, SunStar Lighting, U.S. Lock or Wilmar, and does not contain the notice required by 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(3)(iii)-(vii), and for which Defendants sent at least 25 transmissions of each advertisement;

2.     Appointing Plaintiff as representative for the Plaintiff Class and awarding Plaintiff an incentive award for its efforts as class representative;

3.     Appointing Plaintiff's counsel as counsel for the Plaintiff Class;

4.     In accordance with subsection (b)(3)(B) of the JFPA, for an award of statutory damages in the amount of $500 for each violation of the act and the trebling of such statutory damages, exclusive of interest and costs, according to proof;

5.     For injunctive relief in accordance with subsection (b)(3)(A) of the JFPA, (1) prohibiting Defendants, their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with Defendants, from committing

13

further violations of the act, and thereby prohibiting Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with Defendants, from sending any further unsolicited faxed advertisements to any person or entity; (2) requiring Defendants to deliver to Plaintiff all records of facsimile advertisements since February 1, 2007, including all content sent via facsimile, transmission lists, and fax confirmation lists; (3) requiring Defendants to adopt ongoing educational, training and monitoring programs to ensure compliance with the JFPA, and limiting facsimile advertising activity to personnel who have undergone such training; (4) requiring Defendants to provide written notice to all persons and entities to whom Defendants sent via facsimile transmission unsolicited advertisements, informing such persons and entities that Defendants' facsimile transmission of unsolicited advertisements violated the JFPA and that Defendants' facsimile transmissions should not encourage or mislead recipients to fax unsolicited advertisements of their own; and (5) requiring Defendants to conspicuously place on the homepage of their respective websites the warnings contained in (4) of this subparagraph 5;

6.      Ordering payment of Plaintiff's costs of litigation, including without limitation costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

7.      For pre-judgment interest;

8.      For costs of suit herein from Defendants;

9.      For such other and further relief as the Court shall deem just and proper.

14

Dated: May ___, 2011

By: _____
                    John R. Wylie

One of the Attorneys for Plaintiff
Craftwood Lumber Company and for all
those similarly situated

Charles R. Watkins
E-mail: charlesw@dglawfirm.com
John R. Wylie
E-mail: johnw@dglawfirm.com
Donaldson & Guin LLC
300 South Wacker Drive, Suite 1700
Chicago, IL 60606
(312) 878-8391

Frank Owen
Illinois Bar No. 3124947
Florida Bar No. 0702188
TCPA Law Firm
900 South Federal Highway
Suite C
Hollywood, Florida 33020
Telephone: (954) 964-8000
Facsimile: (954) 367-2842
Attorneys for Plaintiffs Craftwood Lumber Company
and for all those similarly situated

4830-1722-9320.4

15

**Exhibit 1**

1/28/10 8:18          904-388-2723          847-831-2805          D 1/1

**FREIGHT IS PREPAID ON THIS ORDER WITH SALE CODE 9197**



**NO MEMBERSHIP FEES**
**NO STOP FEES**
**NO BROKEN CASE FEES**

### MARKET PALLET BUYS

10 - T00 5D169I
10 - T00 50 169

| ITEM | DESCRIPTION | QTY | PRICE |
|------|-------------|-----|-------|
| 500 | CAULK GUN 10.5 OZ CAPACITY | 48 | $1.25 |
| 6217 | ANGLE STOP 5/8 COMP X 3/8 COMP CHROME PLATED | 50 | $1.75 |
| 6211 | ANGLE STOP 1/2 FIP X 3/8 COMP CHROME PLATED | 50 | $1.65 |
| 6210 | ANGLE STOP 3/8 FIP X 3/8 COMP CHROME PLATED | 60 | $1.50 |
| 6221 | STRAIGHT STOP 1/2 FIP X 3/8 COMP CHROME PLATED | 50 | $1.85 |
| 6227 | STRAIGHT STOP 5/8 COMP X 3/8 COMP CHROME PLATED | 50 | $1.95 |
| 114512 | NON METAL KITCHEN FAUCET WITH SPRAY CHROME | 36 | $9.50 |
| 114510 | NON METAL KITCHEN FAUCET WITHOUT SPRAY CHROME | 36 | $7.25 |
| 114517 | NON METAL LAV FAUCET WITH ABS POP UP CHROME | 36 | $6.35 |
| 114515 | NON METAL LAV FAUCET WITHOUT POP UP CHROME | 36 | $5.50 |
| 114082 | NON METAL SINGLE ACRYLIC HANDLE LAV FAUCET W/O POP UP | 36 | $8.75 |
| 114250 | METAL LAV FAUCET 2 ACRYLIC HANDLES WITHOUT POP UP | 30 | $10.95 |
| 114245 | METAL LAV FAUCET 2 ACRYLIC HANDLE WITH ABS POP UP | 30 | $13.95 |
| 114243 | METAL KITCHEN FAUCET 2 ACRYLIC HANDLE WITHOUT SPRAY | 30 | $16.95 |
| 114244 | METAL KITCHEN FAUCET 2 ACRYLIC HANDLES WITH SPRAY | 30 | $19.95 |
| 172300 | PVC P-TRAP 1-1/2" WITH SLEEVE ADAPTER | 100 | $0.85 |
| 172014 | PVC P-TRAP 1-1/2" | 100 | $0.80 |
| 172011 | PVC P-TRAP 1-1/4" | 100 | $0.90 |
| 172055 | PVC S-TRP 1-1/4" | 50 | $1.75 |
| 231133 | PVC SINK SUPPLY LINE 3/8 COMP X 1/2FIP X 12" | 50 | $1.10 |
| 231137 | PVC SINK SUPPLY LINE 3/8 COMP X 1/2 FIP X16" | 50 | $1.15 |
| 231156 | PVC SINK SUPPLY LINE 3/8 COMP X 1/2 FIP X 20" | 50 | $1.20 |
| 231140 | PVC SINK SUPPLY LINE 3/8 COMP X 1/2 FIP X 36" | 50 | $1.45 |
| 231136 | PVC TOILET SUPPLY LINE 3/8 COMP X 7/8 BC X 12" | 50 | $1.00 |
| 231231 | SS SINK SUPPLY LINE 3/8 COMP X 1/2 FIP X 16" | 50 | $1.25 |
| 231232 | SS SINK SUPPLY LINE 3/8COMP X 1/2 FIP X 20" | 50 | $1.30 |
| 231271 | SS TOILET SUPPLY LINE 3/8 COMP X 7/8 BC X12" | 50 | $1.35 |
| 231274 | SS TOILET SUPPLY LINE 3/8 COMP X 7/8 BC X 16" | 50 | $1.25 |
| 8039CP | SS SINK STRAINER ASSEMBLY ALL METAL | 50 | $2.00 |
| 613348 | DOUBLE WEATHERPROOF SPOTLIGHT LAMPHOLDER | 40 | $4.00 |
| 612403 | KEYLESS RECEPTACLE PORCELAIN | 50 | $0.80 |
| 602674 | 15 AMP GFCI IVORY | 50 | $5.65 |
| 602873 | 15 AMP GFCI WHITE | 50 | $5.65 |

*ALL DO IT BEST MEMBERS RECEIVE PREPAID FREIGHT ON ALL ORDERS OVER $250 WHEN WE INVOICE YOU THROUGH DIB*

*ORDERS PROCESSED BY NOON SHIP SAME DAY WITH NEXT DAY DELIVERY\**
*SOME EXCEPTIONS APPLY

**Exhibit 2**



DON'T SEE IT HERE, CHECK US OUT ON OUR
WEB SITE AT
WWW.E-BARNETT.COM

**KEY CODE**
6026

**PRICES EFFECTIVE**
GOOD THROUGH APRIL 30TH.

# NOBAND POOL CHEMICALS HELPING TO KEEP THAT POOL LOOKING BEAUTIFUL!





| ITEM | DESCRIPTION | Reg. | Sale Price |
|---|---|---|---|
| 558174 | GRANULAR DICHLOR; SODIUM DICHLORO-S-TRIAZINETRIONE - 25LB. PL | $81.90 | $79.00 |
| 558175 | GRANULAR DICHLOR; SODIUM DICHLORO-S-TRIAZNETRIONE - 50LB. PL | $132.52 | $130.52 |
| 558179 | ULTRA QUICK SWIM - OXYGEN SHOCK - 25LB. PAIL | $68.10 | $67.00 |
| 563004 | ULTRA QUICK SWIM - OXYGEN SHOCK - 2.2LB. BAG | $7.34 | $7.00 |
| 558184 | BROMINE TAB.; BACTERICIDE, ALGAECIDE, & DISINFECTANT 50LB. PAIL | $162.51 | $184.56 |
| 538162 | BROMINE TAB; BACTERICIDE, ALGAECIDE, & DISINFECTANT 25LB. PAIL | $89.94 | $82.50 |
| 900504 | 1" CHLORINE TABLETS CONTAINS TRICHLORO-S-TRIZENITRONE | $124.99 | $124.00 |
| 900503 | 3" CHLORINE TABLETS CONTAINS TRICHLORO-S-TRIAZENITRONE-25LB PAIL | $62.95 | $62.00 |
| 900501 | 3" CHLORINE TABLETS CONTAINS TRICHLORO-S-TRIZENITRONE-50LB PAIL | $119.99 | $118.00 |
| 900502 | 1/2 LB. CHLOR. SKIMMER STICKS / TRICHLORO-S-TRIZENITRONE | $135.45 | $132.99 |

| ITEM | DESCRIPTION | Reg. | Sale Price |
|---|---|---|---|
| 535974 | STABILIZER / MAXIMIZES AVAIL CHLORINE - 35LB. PAIL | $60.35 | $59.00 |
| 536159 | STABILIZER / MAXIMIZES AVAIL CHLORINE - 4LB. PAIL | $8.29 | $7.40 |
| 558193 | POOL SHOCK 68% CALCIUM HYPOCHLORITE, 68% AVAL. CHLORINE | $2.19 | $2.10 |
| 879061 | CAL-HYPO 25LB. PAIL | $48.00 | $45.00 |
| 12787 | MURIATIC ACID COMMERCIAL STRENGTH PK. 4 PER CASE | $4.15 | $3.75 |
| 558192 | SUPER BLUE; WILL NOT AFFECT pH BALANCE 1OZ. PER 5,000 GALS. | $10.03 | $8.99 |





| ITEM | DESCRIPTION | Reg. | Sale Price |
|---|---|---|---|
| 558178 | SODA ASH; SODIUM CARBONATE 25LB BUCKET | $28.24 | $25.49 |
| 558183 | SODA ASH; SODIUM CARBONATE 50LB BAG | $18.37 | $17.99 |
| 558194 | SODIUM BICARBONATE; INCREASES PH - 50LB. BAG | $21.94 | $18.99 |
| 558195 | SCUM DIGESTER®; REMOVES OILS, LOTIONS, SCUM LINES - 1GAL. | $22.78 | $21.60 |
| 535972 | 25# ALKALINITY UP 25LB. PAIL | $20.76 | $19.99 |
| 524236 | SILICA SAND #20 POOL FILTER SAND - 50LB. BAG | $8.98 | $8.59 |

| ITEM | DESCRIPTION | Reg. | Sale Price |
|---|---|---|---|
| 563005 | PH UP; ALLOWS YOU TO RAISE PH LEVELS AS NEEDED / 4LB. BOTTLE | $3.79 | $3.70 |
| 879003 | PH DOWN ; LOWER YOUR PH LEVELS AS NEEDED / 10LB. BOTTLE | $9.71 | $8.99 |
| 524249 | PROFESSIONAL DPD TEST KIT K2005; | $37.00 | $36.00 |
| 507083 | 5-WAY DPD PROFESSIONAL TEST KIT | $25.03 | $22.95 |
| 560874 | (RAMUC) ACRYLIC DECK PAINT | $51.40 | $43.95 |
| 560877 | (RAMUC) TYPE EP EPOXY POOL PAINT; DAWN BLUE | $69.52 | $63.52 |
| 560878 | (RAMUC) TYPE EP EPOXY POOL PAINT; WHITE | $69.52 | $63.52 |
| 712006 | VACUUM HOSES; 1-1/2" 40' | $40.49 | $37.49 |
| 712023 | VACUUM HOSES; 1-1/2" 50' | $47.52 | $43.49 |
















**GALLONAGE CHART**





**Contact your Barnett Wholesale Representative Phone:**
1-800-314-6430