# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

## EASTERN DIVISION

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>Interline Brands, Inc., a Delaware corporation; Interline Brands, Inc., a New Jersey corporation;<br><br>            Defendants. | Case No. 11 CV 4462<br>Judge Grady<br><br>**Class Action**<br><br>**First Amended Complaint for Violations of the Junk Fax Prevention Act (47 U.S.C. § 227); Demand for Jury Trial; Exhibits**<br><br>**[FED. R. CIV. P. 3, 8, 23; 28 U.S.C. §§ 1331, 1332(d)]** |

Plaintiff Craftwood Lumber Company ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, and avers:

## Introduction

1.     More than two decades ago the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") was enacted into law. The law responded to countless complaints by American consumers and businesses about the cost, disruption and nuisance imposed by junk faxes. The law prohibited the transmission of facsimile advertising without prior express invitation or permission of the recipient. In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by amending it through the Junk Fax Prevention Act of 2005

("JFPA" or the "Act").[1]  As amended, the law requires senders to include in their faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future junk faxes and explains how to exercise that right.

2.     Plaintiff brings this class action to recover damages for and enjoin massive junk faxing by Defendants in direct violation of the JFPA and the regulations promulgated by the Federal Communications Commission ("FCC") thereunder.  Defendants have, within four years of the original filing of this action on May 10, 2011,[2] blasted over 1,500 advertisements in at least 735,000 facsimile transmissions nationwide in direct violation of the JFPA and FCC's regulations.  Defendants' violations include, but are not limited to, the facsimile transmission of advertisements on January 28, 2010, and April 14, 2010, to Plaintiff's telephone facsimile number, true and correct copies of which advertisements are attached as Exhibits 1 and 2.

3.     **Jurisdiction.**  This Court has subject matter jurisdiction over this matter under (i) federal-question jurisdiction, 28 U.S.C. § 1331; *see Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740, 747, 1818 L. Ed. 2d 881 (2012); and (ii) the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the amount in controversy in this civil action exceeds $5 million, and this is a class action in which at least one member of the class of

---

[1]     Unless otherwise noted, all statutory references are to this statute.

[2]     The statute of limitations for this action is the four year limitations period provided in 28 U.S.C. § 1658.

plaintiffs is a citizen of a state different from any defendant. The Plaintiff Class seeks minimum damages of $1,500 for each of the more than 3,334 statutory violations committed by Defendants, establishing an amount in controversy that exceeds the 28 U.S.C. § 1332(d) jurisdictional minimum. The Court has personal jurisdiction over Defendants.

4.    **Venue**.  Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants sent faxed advertisements in violation of the JFPA and FCC's regulations to this judicial district.

## The Parties

5.    **Individual Plaintiff/Class Representative**.  Plaintiff Craftwood Lumber Company is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of Illinois, with its principal place of business in Highland Park, Illinois. Plaintiff is and at all times relevant hereto was the subscriber of the facsimile telephone number (847) 831-2805 to which the faxes attached as Exhibits 1 and 2 were sent by Defendants.

6.    **Defendant Interline Brands, Inc.**  Defendant Interline Brands, Inc., is, and at all times relevant hereto was, a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Jacksonville, Florida.

7.    **Defendant Interline Brands, Inc**.  Defendant Interline Brands, Inc. ("Interline New Jersey"), is, and at all times relevant hereto was, a

corporation organized and existing under the laws of the state of New Jersey, having its principal place of business in Jacksonville, Florida. Interline New Jersey is the principal operating unit of Interline Brands, Inc. Unless otherwise indicated, Defendants Interline Brands, Inc, and Interline New Jersey are collectively referred to throughout this Complaint as "Interline," "Defendants" or the "Company."

### The JFPA's Prohibition Against Junk Faxing

8.      By the early 1990's, advertisers had exploited facsimile telephone technology to blanket the country with junk fax advertisements. This practice imposed tremendous disruption, annoyance, and cost on the recipients. Among other things, junk faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, and require recipients to sort through faxes to separate legitimate fax communications from junk advertisements and to discard the latter. Congress responded to the problem by passing the TCPA. The TCPA made it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The anti-junk fax law was enacted to eradicate "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. No. 102-317 (1991).

9.      In the decade following the law's enactment, however, American consumers and businesses continued to be "besieged" by junk faxes because senders refused to honor requests by recipients to stop. FCC, Report and Order on Reconsideration of Rules and Regulations

Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003).
Congress responded by strengthening the law through the JFPA. The JFPA
continued the prohibition against sending unsolicited advertisements via
facsimile transmission. The FCC has defined a "sender" under the JFPA to
include any "person or entity on whose behalf a facsimile unsolicited
advertisement is sent or whose goods or services are advertised or promoted
in the unsolicited advertisement." 47 C.F.R. § 64.1200(a)(3), (f)(8). The
statute defines "unsolicited advertisement" as "any material advertising the
commercial availability or quality of any property, goods, or services which
is transmitted to any person without that person's prior express invitation or
permission, in writing or otherwise." § 227(a)(5).

10. The JFPA, for the first time, required senders to disclose to
recipients their right and ability to stop future junk faxes (hereinafter
collectively the "Opt-Out Notice Requirements"). § 227(b)(1)(C)(iii),
(b)(2)(D), (b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(3)(iii)-(vii). Senders of
faxed advertisements must place a clear and conspicuous notice on the first
page of the advertisement. The notice must provide each of the following
six disclosures:

A. a disclosure that the recipient is entitled to opt-out from
receiving future faxed advertisements – thereby giving recipients impetus to
opt-out, if they desire, knowing that they have the right to do so;

B. a disclosure that the sender's failure to honor a
recipient's opt-out request within 30 days is unlawful – thereby encouraging
recipients to opt-out, if they do not want future faxes, by advising them that

their opt-out requests have the force of law;

C.     a disclosure advising the recipient that he or she can opt-out of all his or her fax numbers, and not just the one that to which the particular fax was sent – thereby instructing a recipient how to stop junk faxes to all of his or her fax numbers;

D.     a disclosure of both a domestic telephone and fax number for the recipient to make opt-out requests – thereby giving the recipient the choice of methods to communicate the request;

E.     a disclosure of a cost-free mechanism for a recipient to submit opt-out requests – thereby further encouraging recipients to make an opt-out request because it would be at no additional cost to them; and

F.     a disclosure expressly informing the recipient how to make a valid opt-out request:  either to the telephone number, fax number or cost-free mechanism set forth in the notice.

11.     Compliance with the Opt-Out Notice Requirements is neither difficult nor costly.

### Interline's Junk Fax Program

12.     Interline is one of the nation's largest wholesale distributors and direct marketers of maintenance, repair and operations (MRO) products for non-industrial businesses.  Interline's MRO products include plumbing,

electrical, hardware, janitorial, heating, ventilation and air conditioning products. Interline sells products under the banner of several brand names, including, as pertinent here, Sunstar, Barnett (Pro, Wholesale and Export lines), Hardware Express, Leran, All Fit, Maintenance USA, U.S. Lock, Wilmar and Sexauer.

13.     In early 2008 Interline launched a centralized fax-blasting program to promote the sale of products sold under its brands. The program began with faxes advertising products sold under the Sunstar and Barnett Pro lines, but by the end of the year was adopted for the Hardware Express, Barnett Wholesale, Barnett Export, Leran and All Fit lines. The following year the company expanded the program by blasting fax ads advertising products sold under the U.S. Lock, Maintenance USA, Sexauer and Wilmar lines. The faxes not only promoted Interline's products, but also the company's websites, which themselves were advertisements for the company and its products.

14.     Notwithstanding these brand distinctions, the fax-blasting program was centralized in Interline's marketing/sales departments using shared resources, with each brand having its own team. For the most part, the marketing personnel were physically located in the same office at company headquarters.

15.     The fax-blast program was conducted through the following common policies and practices: The faxes were advertisements of the Company's products and services, including its websites; the faxes were prepared by or through Interline's marketing/sales departments; the targets

7

of the advertisements, that is, their intended recipients, were selected by or through the marketing/sales departments; and the physical fax transmissions were done through one of two third-party fax broadcasters (Protus and WestFax) under contracts with Interline's marketing department. For each faxed advertisement, the fax broadcaster reported to Interline on the number of unsuccessful and successful transmissions. Protus and WestFax charged for and were paid by Interline only for successful fax transmissions. Through these reports and/or lists used to conduct the faxing, Plaintiff is able to ascertain and define the members of the proposed plaintiff class and to calculate the number of transmissions that violated the JFPA and/or FCC regulations.

16.     Interline's fax-blast program also had the important overarching common fact: It failed to comply with the Opt-Out Notice Requirements. Indeed, for the vast majority of the facsimile transmissions, Interline failed to include an opt-out notice of any kind in its faxed advertisements.

17.     The failure of Interline to comply with the Opt-Out Notice Requirements is itself a violation of the JFPA and/or the FCC's regulations promulgated thereunder, providing the class with a private right of action under § 227(b)(3). As a further result of Interline's failure to comply with the Opt-Out Notice Requirements, Interline is precluded from asserting either of the two statutory defenses provided under the JFPA: (i) "prior express invitation or permission" (or "PEP" for short, § 227(a)(5)), that may have been given by a recipient; and (ii) a three-prong defense based on transmissions to a recipient with whom Defendants may have had an "established business relationship" (or "EBR" for short, § 227(b)(1)(C)(i)-

8

(iii)).  Both PEP and EBR are affirmative defenses for Defendants to plead and prove.[3]

18.     Interline's violations of the JFPA and/or FCC regulations were "willful" and/or "knowing" as used in § 227(b)(3) because Interline fully intended its acts; the Company's sending of a torrent of fax ads was no mistake or accident.  In addition, Interline's violations were willful and/or knowing because:

A.     Interline was well aware from the outset of its above-described fax program of the anti-junk fax law's requirements, including, but not limited to, the requirement that the Company's advertisements include valid opt-out notices.

B.     The contracts between Interline and the fax broadcasters Protus and WestFax warned Interline against violating the Act and Interline agreed to comply with the Act in those contracts.

---

[3]     The FCC ruled that "the burden of proof rests on the sender to demonstrate that permission was given."  (*See* Report and Order and Third Order on Reconsideration in the Matter of Rules and Regulations Implementing the TCPA of 1991, 21 F.C.C.R. 3787, 2006 WL 901720 ¶ 83 (April 6, 2006).)  The FCC further requires that a sender's proof of PEP must be "clear and convincing."  (*Id.* ¶ 36.)  Likewise, the FCC has made clear that "[s]hould a question arise, however, as to the validity of an EBR, the burden will be on the sender to show that it has a valid EBR with the recipient."  (*Id.* ¶ 80.)

In any event, Interline cannot establish either the PEP or EBR defense.  Among other things, Interline used fax lists purchased or rented from list providers to send faxes to companies on such lists without contacting them to obtain PEP (and the existence of any EBR between Interline and such companies would be a mere coincidence).  In addition, Interline otherwise blasted junk faxes without first obtaining recipients' PEP.

C.      Interline sent fax advertisements with opt-out notices containing many of the disclosures required under the Opt-Out Notice Requirements.  After sending these faxes, Interline sent the faxes at issue without any opt-out notice or with opt-out notices omitting the disclosures it had previously included.

D.      Interline failed to include opt-out notices in order to, among other things, maximize the amount of advertising content in the faxes.

E.      There was no effort to comply with the Opt-Out Notice Requirements in connection with the faxes at issue.  To the extent that any of these faxes contained opt-out notices it was without regard to, or consideration of, the Opt-Out Notice Requirements.

F.      At all times relevant, Interline had an in-house legal department.  Interline employees involved in the fax program completely bypassed the legal department.  For itself, the legal department provided no guidelines or training in compliance with the Act.  But in comparison the legal department provided guidance to Interline employees with respect to opt-out notices for emails.[4]

G.      Interline sent faxes in violation of the Opt-Out Notice

---

[4]      But Interline employee Nimsay Montgomery testified that Interline employees were advised by the legal department to include "the opt-out language in our faxing."  If the legal department gave guidance on TCPA compliance to Interline, then it blatantly disregarded the same, further establishing that Interline's violations were "willful" and/or "knowing."

Requirements even after being served with the lawsuit. Interline admitted in response to interrogatories that it blasted 9,637 transmissions of ten such faxed advertisements after service of the complaint in this case.

## Class Action Averments

19. **Statutory Reference.** This action is properly maintainable as a class action because (a) all prerequisites of rule 23(a) are satisfied; (b) prosecution of separate actions by one or more individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class and would establish incompatible standards of conduct for Defendants, in the manner contemplated by rule 23(b)(1)(A); (c) Defendants have acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole, as contemplated by rule 23(b)(2); and (d) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, as contemplated by rule 23(b)(3).

20. **Class Definition**. The Plaintiff Class consists of all persons and entities that were subscribers of facsimile telephone numbers to which facsimile transmissions were sent of one or more of the faxes listed on the Tables attached as Exhibit 3 and made a part hereof.[5] These Tables are

---

[5]    The faxes sent to Plaintiff attached hereto as Exhibits 1 and 2 are identified as Ref. # 628 and # 752 on Exhibit 3 (pages 40 and 43 to this Complaint).

taken from Defendant's interrogatory responses in which Defendants identified faxes that they sent from January 16, 2008, through and including July 4, 2011.[6]  Plaintiff reserves the right to amend the class definition after completion of class certification discovery.[7]

21.   **Class Size**.  Plaintiff is informed and believes and based thereon avers that the Plaintiff Class numbers in the tens of thousands.  In response to Plaintiff's Requests for Admission, Defendants admit that the Plaintiff Class is numerous within the meaning of rule 23(a)(1).

22.   **Typicality.**  The claims of Plaintiff are typical of the Plaintiff Class in that, among other things, they were sent the same type of faxed communications that violated the Opt-Out Notice Requirements; they have same claims under the same statute; and they are entitled to the same statutory damages.

23.   **Adequacy of Representation**.  The Plaintiff Class will be well represented by the class representative and class counsel.  Plaintiff appreciates the responsibilities of a class representative and understands the nature and significance of the claims made in this case.  Plaintiff can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between its interests and the interests of other class members.  Proposed class counsel have the necessary resources,

---

[6]     The Tables were modified to include additional faxes sent by Defendants obtained through discovery in the case.

[7]     This includes the right to delete from, or add to, the faxes referenced in the Tables.

experience and ability to prosecute this case on a class action basis. Co-lead counsel have more 60 years experience representing clients in complex business disputes, have significant experience as class counsel in federal and state courts, and have significant experience litigating claims under the Act. Class counsel Scott Zimmermann was counsel for the successful appellants in the leading TCPA decision in California, *Kaufman v. ACS Sys., Inc.,* 110 Cal. App. 4th 886 (2003).

24. **Impracticability of Joinder**. Joinder of all Plaintiff Class members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each Plaintiff Class member, in comparison to the time and costs associated with joinder in the litigation on an individual basis.

25. **Common Questions of Law and Fact.** Questions of law and fact common to the class predominate over questions affecting only individual class members. Numerous questions may be jointly tried and would not require each member individually to litigate numerous and substantial questions to determine his or her right to recover following the class judgment.

A. **Common Questions of Fact.** This case presents numerous questions of fact that are common to all class members claims. The case arises out of a common nucleus of fact, and standardized conduct by Defendants, in that: (1) the same type of faxes [advertising]; (2) were transmitted by the same senders [Interline, through its marketing/sales departments], in the same manner [with the physical sending done through

fax broadcasters Protus and WestFax]; (3) violating the same statute [the JFPA], in the same way [violations of the Opt-Out Notice Requirements]; and (4) entitling class members to receive the same amount of statutory damages [$500 per transmission under subsection (b)(3) of the Act].

**B.     Common Questions of Law.**  The case presents numerous common questions of law, including, but not limited to:

(1)     whether the faxes at issue are advertisements within the ambit of the JFPA and the FCC regulations promulgated thereunder;

(2)     whether Defendants complied with the Opt-Out Notice Requirements of the JFPA and the FCC's regulations promulgated thereunder, and the legal consequences of the failure to comply with those requirements;

(3)     what constitutes a willful or knowing violation of the JFPA within the meaning of section (b)(3);

(4)     whether Defendants committed willful and/or knowing violations of the JFPA and/or the FCC's regulations promulgated thereunder;

(5)     whether damages should be increased on account of Defendants' willful and/or knowing violations and, if so, by what amount;

(6)     whether injunctive relief is warranted to enjoin

Defendants, as requested in this Complaint; and

(7)     whether the JFPA violates the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, as contended by Defendants.

26.     **Injunctive Relief Is Appropriate.**  Defendants have acted on grounds that apply generally to the Plaintiff Class, so that injunctive relief is appropriate respecting the Plaintiff Class as a whole.

27.     **Predominance and Superiority of Class Adjudication.**  The action should be maintained as a class action because questions of law and fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy:

A.     Common questions of law and fact, including those identified in paragraph 25, predominate over questions affecting only individual members.

B.     Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

C.     Proof of the claims of Plaintiff will also prove the claims of the Plaintiff Class without the need for separate or individualized proceedings and the statutory damages provided for in the JFPA are the

same for all members of the Plaintiff Class, such that damages can be calculated with mathematical certainty.

D.     Defendants have acted pursuant to common policies and practices in the same or similar manner with respect to all members of the Plaintiff Class.

E.     Absent class certification there is a possibility of numerous individual cases and, therefore, class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.

F.     Most members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action.  Because the statutory minimum damage is $500 per violation, and the Act contains no provision authorizing an award of attorneys' fees to a successful plaintiff, individual action to remedy Defendants' violations of the Act and FCC regulations would be grossly uneconomical.  As a practical matter, the claims of the vast majority of the Plaintiff Class are not likely to be redressed absent certification.

G.     Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and, hence, subject to an order spreading the costs of litigation among the class members in relationship to the benefits received.

28.     **Notice.**  Plaintiff contemplates that notice be provided to all

class members that can be identified through reasonable effort. Rule 23 requires, and the notice will concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues and defenses; that a class member may enter an appearance through counsel if the member so desires; if the class is certified under rule 23(b)(3), that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under rule 23(c)(3).

## Claim for Relief for Violations of 47 U.S.C. § 227
## (Against All Defendants)

29. **Incorporation**. Plaintiff and the Plaintiff Class reassert and reallege the allegations set forth in paragraphs 1 through 28, above.

30. **Defendants' Violations of the Act and FCC Regulations.** Commencing within four years of the filing of this action on May 10, 2011 and continuing through at least July 4, 2011, Defendants violated the JFPA and the FCC's regulations promulgated under the Act by, among other things, sending advertisements via facsimile from telephone facsimile machines, computers, or other devices to telephone facsimile machines via facsimile telephone numbers of Plaintiff and members of the Plaintiff Class that failed to comply with the Opt-Out Notice Requirements. (§ 227 (b)(1)(C)(iii), (b)(2)(D) and (b)(2)(E), and by 47 C.F.R. § 64.1200(a)(3)(iii), (iv).)

31.     Defendants are each a sender of the faxes that are the subject of this lawsuit because the faxes were sent on their behalf and because the faxes advertised or promoted the property, goods, and services of Defendants.

32.     **Private Right of Action.**  Under section (b)(3) of the Act, Plaintiff has a private right of action to bring this claim on behalf of itself and on behalf of the Plaintiff Class to redress Defendants' violations of the Act and the FCC's regulations promulgated thereunder.

33.     **Injunctive Relief.**  Subsection (b)(3)(A) of the Act authorizes Plaintiff to bring an action to enjoin a violation of the Act and/or FCC regulations.  Plaintiff requests that preliminary and permanent injunctions issue to: (1) prohibit Defendants, their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with Defendants, from committing further violations of the Act and FCC regulations, and thereby, among other things, prohibiting Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with Defendants, from sending any further unsolicited faxed advertisements to any person or entity; (2) require Defendants to deliver to Plaintiff all records of facsimile advertisements since May 10, 2007, including all content sent via facsimile, fax lists, and transmission records; (3) require Defendants to adopt ongoing educational, training and monitoring programs to ensure compliance with the JFPA, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendants to provide written notice to all persons and entities to whom Defendants sent, via facsimile transmission, advertisements

in violation the Act and/or FCC regulations, warning such persons and entities that the facsimile transmission of unsolicited advertisements is in violation of the JFPA and that they should not be led or encouraged in any way by Defendants' violations of the Act and/or FCC regulations to send advertisements of their own that violate the Act and/or FCC regulations; and (5) require Defendants to conspicuously place on the homepage of their respective websites the warnings contained in (4) of this paragraph 33.

34. **Damages.** Subsection (b)(3)(B) of the Act provides for the recovery of damages in the minimum amount of $500 for each violation by Defendants of the JFPA and/or the FCC's regulations promulgated thereunder. In addition, Plaintiff is informed and believes, and upon such information and belief alleges, that Defendants committed their violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, as also authorized by subsection (b)(3)(B).

## Prayer for Relief

WHEREFORE, Plaintiff and the Plaintiff Class pray for judgment against Defendants, and each of them, as follows:

1. Certifying a class that consists of all persons and entities that were subscribers of facsimile telephone numbers of all persons and entities that are subscribers of telephone facsimile numbers to which facsimile transmissions were sent of one or more of the faxes listed on the Tables attached as Exhibit 3 hereof, or as further amended.

2.     Appointing Plaintiff as representative for the Plaintiff Class and awarding Plaintiff an incentive award for its efforts as class representative;

3.     Appointing Plaintiff's counsel as counsel for the Plaintiff Class;

4.     In accordance with subsection (b)(3)(B) of the Act, for an award of statutory damages in the amount of $500 for each of the no fewer than 735,000 violations of the Act and/or the FCC's regulations promulgated thereunder and the trebling of such statutory damages;

5.     Subsection (b)(3)(A) of the Act authorizes Plaintiff to bring an action to enjoin a violation of the Act and/or FCC regulations. Plaintiff requests that preliminary and permanent injunctions issue to: (1) prohibit Defendants, their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with Defendants, from committing further violations of the Act, and thereby, among other things, prohibiting Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with Defendants, from sending any further unsolicited faxed advertisements to any person or entity; (2) require Defendants to deliver to Plaintiff all records of facsimile advertisements since May 10, 2007, including all content sent via facsimile, fax lists, and transmission records; (3) require Defendants to adopt ongoing educational, training and monitoring programs to ensure compliance with the JFPA, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendants to provide written notice to all persons and entities to whom Defendants sent, via facsimile transmission, advertisements in violation the Act and/or FCC regulations, warning such

persons and entities that the facsimile transmission of unsolicited advertisements is in violation of the JFPA and that they should not be led or encouraged in any way by Defendants' violations of the Act and/or FCC regulations to send advertisements of their own that violate the Act and/or FCC regulations; and (5) require Defendants to conspicuously place on the homepage of their respective websites the warnings contained in (4) of this subparagraph 5;

6.      Ordering payment of Plaintiff's costs of litigation, including, without limitation, costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

7.      For pre-judgment interest; and

8.      For such other and further relief as the Court shall deem just and proper.

## Jury Demand

Plaintiff demands trial by jury on all issues triable by jury.

DATED:  September 24, 2012

By:    /s/ Scott Z. Zimmermann

One of the Attorneys for Plaintiff Craftwood
Lumber Company and for all others similarly
situated

Scott Z. Zimmermann [California Bar No. 78694;
Admitted to the General Bar of this Court]
Email: szimm@zkcf.com
601 S. Figueroa St., Suite 2610
Los Angeles, CA 90017
(213) 452-6509

*Additional Counsel:

** LOCAL Counsel:

C. Darryl Cordero [California Bar No.
104527;
Admitted to the General Bar of this Court]
Email: cdc@paynefears.com
Payne & Fears LLP
801 S. Figueroa St., Suite 1150
Los Angeles, CA 90017
Telephone: (213) 439-9911

Charles R. Watkins
Email: charles@dglawifrm.com
John R. Wylie
Email: johnw@dglawfirm.com
Donaldson & Guin LLC
300 S. Wacker Drive, Suite 1700
Chicago, IL 60606
(312) 878-8391

Frank Owen [Illinois Bar No. 3124947;
Florida Bar No. 0702188]
Email: frank@rossproperties
Frank F. Owen & Associates, P.A.
21485 NW 27th Avenue
Miami Gardens, Florida 33056
Telephone:  (954) 964-8000

4850-0238-9009.2