# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>Interline Brands, Inc., a Delaware corporation; Interline Brands, Inc., a New Jersey corporation,<br><br>      Defendants. | **Case No. 11-cv-4462**<br><br>Hon. Amy J. St. Eve |

**Brief in Support of Plaintiff's Motion for Instructions Regarding Payment to Settlement Class Members**

Class Representative/Plaintiff Craftwood Lumber Company ("Craftwood") seeks instructions from the Court regarding the calculation of payments to be made to Settlement Class members.

The settlement received final approval from the Court on March 23, 2015. (*See* Judgment and Order, Dkt. No. 151.) As the Court recalls, the settlement is not a claims-made settlement. It provides for direct payment to class members without the need for members to file a claim. The settlement requires Defendants Interline Brands, Inc., to pay a total of $40 million. (Settlement Agreement ¶ 3.A.)[1]

On July 6, 2015, Interline deposited with the claims administrator (KCC) the sum of $39.9 million, thereby completing its $40 million payment. The net of the $40 million (after costs of administration, award of attorneys' fees and costs to class counsel and incentive award to Craftwood) is defined in the Settlement Agreement as the "Members' Payment Amount." (Settlement Agreement ¶ 3.C.) Paragraph 3.C of the Settlement Agreement further provides that:

> "The Members' Payment Amount shall be distributed to Settlement Class Members based on the number of facsimile transmissions ('Fax Transmissions') of Faxes that were sent by Defendants to the Settlement Class Members as determined by the Claims Administrator in accordance with the Settlement Agreement. A Settlement Class Member shall be

---

[1] The Settlement Agreement was filed with the Court as Dkt. 128. Craftwood incorporates it by reference.

awarded one share ('Share') for each Fax Transmission. Each Share shall
entitle a Settlement Class Member to be paid the dollar sum achieved by
dividing the Members' Payment Amount by the total number of Shares
awarded to all Settlement Class Members."

Settlement Class members potentially entitled to payment were included in a "Master Facsimile Transmission Database," or "MFTD," to be furnished by Interline. (Settlement Agreement ¶ 6.)[2] About three weeks after the settlement agreement was executed, Interline furnished the MFTD to KCC and class counsel. The MFTD contained 80,824 unique facsimile telephone numbers, representing 559,245 Fax Transmissions. For most entries, the database included the name(s) and last known mailing address(es) associated with the unique facsimile telephone numbers to which Interline sent its faxes.

For about one-fourth of the entries, however, the MFTD contained no name and/or no address information. Of the 80,000-plus facsimile telephone numbers, only 61,021 had both associated name and address information. (*See* Declaration of KCC Senior Consultant Tony Dang, filed as Dkt. No. 146-2 ("Dang Decl.") ¶ 4.) In response, KCC undertook extraordinary measures to obtain or update the previously missing (or in some

---

[2] Paragraph 3.D of the Settlement Agreement provides: "The Claims Administrator shall use the MFTD to determine the number of Fax Transmissions of Faxes that the MFTD indicates were sent to the facsimile telephone number(s) listed on the MFTD. The Settlement Class Member shall be awarded one Share for each Fax Transmission of a Fax sent to the Settlement Class Member according to the MFTD. A Settlement Class Member shall also be awarded one Share for each Fax Transmission of a Fax not reflected in the MFTD upon the provision of proof by the Settlement Class Member." KCC determined that four class members provided proof of a total of 20 additional Fax Transmissions. (Dang Decl. ¶ 19.) These are inconsequential to the issues presented or to the calculations regarding payment to class members.

cases out of date) name and address information, including retaining the services of three companies (Nexxa, InfoUSA and DataMart) to conduct reverse facsimile telephone number look ups, conducting in-house Google searches, and using the National Change of Address System. (Dang Decl. ¶¶ 4, 5, 8.)

Despite KCC's efforts, there remained almost 6,600 entries for whom the administrator could not obtain a name and/or a valid payment address. This total includes entries for whom no address could be located and entries for whom mailed notice was returned undeliverable. (Dang Decl. ¶¶ 5-11.) These entries, plus fourteen class members who validly requested exclusion from the Settlement Class, total 6,605.

The Settlement Agreement calls for KCC to pay class members "in the form of checks made payable to the Settlement Class Member and *sent via first-class mail* to the address identified on the MFTD, or in a timely submitted Class Member Information Form if different from the MFTD." (Settlement Agreement ¶ 9 (emphasis supplied).) In determining individual class members' shares, KCC considered only members to whom payment could be made under paragraph 9. KCC calculated the per-Fax Transmission payment by dividing the Members' Payment Amount by 496,149—the number of Fax Transmissions to Settlement Class members for whom KCC

is able to make a payment in the manner required by paragraph 9.[3]  As a result, under KCC's analysis, each class member would be sent $60.54 per Fax Transmission.[4]

On July 9, 2015, Interline attorney Bart Murphy sent an email that began with the observation that "Interline and its counsel shall not have any obligation to supervise or control the actions of the Claims Administrator or to ensure that [the Claims Administrator] compl[ies] with [its] obligations under the Settlement Agreement."  (Ex. A (quoting in part from Settlement Agreement ¶ 25).)  Despite this acknowledgement, Interline's attorney proceeded to question KCC's distribution calculations.  Mr. Murphy took the position that the Members' Payment Amount should be calculated based on *all* facsimile telephone numbers in the MFTD, or 80,824, even those for whom KCC does not have an address.[5]  This approach would cut members' per-Fax Transmission payment by almost seven dollars per transmission, to $53.71 (from the $60.54 calculated by KCC).  This would collectively reduce the total class payment by about $3.4 million.[6]

In his email, Mr. Murphy suggested that his calculation method is supported by the fact that Class Notice was also published in U.S. Today, as a supplement to fax and mail Class Notice.  But publication does not alter the fact that the claims administrator cannot mail a check without a payee, or to a nonexistent (or undeliverable) address.

---

[3]  There are 74,219 such members.

[4]  The persons (including those who validly requested exclusion) not included by KCC represent 63,125 Fax Transmissions.

[5]  80,824 also included the fourteen who requested exclusion.  But that is also inconsequential to the issues or calculations.

[6]  A reduction of $6.83 for all 496,149 transmissions equals $3,388,698.

Craftwood believes that the monies represented by these undeliverable checks should go to class members for whom the claims administrator has names and addresses and thereby maximize the amount received by them.

Calculating payment based on members to whom the claims administrator can pay also avoids difficult issues of class administration. Uncashed checks are to be handled through a *cy pres* provided in paragraph 3.C of the Settlement Agreement. But there can be no progress to that stage until the claims administrator has paid all shares:

> "In the event any monies remain of the Members' Payment Amount *after payment of all Shares*, including monies represented by Uncashed Checks, such remaining monies shall be donated to a 501(c)(3) organization chosen by Defendants, subject to Settlement Class Counsel's consent, which shall not be unreasonably withheld, subject to approval by the Court." (Emphasis supplied.)

As noted earlier, the claims administrator can pay all shares only by delivering checks via first class mail to addresses it has been able to secure. (*See* Settlement Agreement ¶ 9.) If "all shares" cannot be paid, the *cy pres* condition would never be satisfied. This supports KCC's determination to award shares only to members to whom KCC can actually pay.

Because of Interline's apparent disagreement with KCC's distribution calculations, Craftwood seeks instructions from the Court. Craftwood requests that the

Court approve that settlement checks be mailed to the 74,219 class members for whom KCC has presumptively good names and addresses and that they be paid $60.54 per-Fax Transmission.

Before closing, the Court should note that because of the differences raised over the calculation of the per-Fax Transmission amount, settlement checks will not be mailed as they otherwise would have been on July 19, 2015 (or July 20, because the 19th is a Sunday). They will be mailed by KCC as soon as feasible after we obtain instructions from the Court.

DATED: July 17, 2015                                Respectfully Submitted,

                                                               s/ Scott Z. Zimmermann
                                                               One of Attorneys for the Certified Class
                                                               Representative/ Plaintiff Craftwood
                                                               Lumber Company and the Certified Class

                                                               Scott Z. Zimmermann
                                                               601 S. Figueroa, Suite 2610
                                                               Los Angeles, California 90017
                                                               Telephone: (213) 452-6509
                                                               Facsimile: (213) 622-2171

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2015, a true and correct copy of the foregoing document was electronically filed with the Court using the CM/ECF system, All counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. All documents required to be served by Fed. R. Civ. P. 5(a) have been served.

s/ C. Darryl Cordero

4814-3328-0805.4